IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WIDESPREAD ELECTRICAL SALES, LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-2541-K |
| | § | |
| UPSTATE BREAKER WHOLESALE SUPPLY, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for partial summary judgment. Defendant Upstate Breaker Wholesale Supply, Inc. ("Defendant") filed a Motion for Partial Summary Judgment (Doc. No. 121), brief in support (Doc. No. 122), and Appendix in Support (Doc. No. 123) (together, "Defendant's Motion"). Plaintiff Widespread Electrical Sales, LLC ("Plaintiff") filed its Response in Opposition ("Plaintiff's Response") (Doc. No. 134) and Defendant filed its Reply in Further Support ("Defendant's Reply") (Doc. No. 135). Plaintiff also filed a Motion for Partial Summary Judgment (Doc. No. 125), brief in support (Doc. No. 126), and Appendix in Support (Doc. No. 127) (together, "Plaintiff's Motion"). Defendant filed a Response in Opposition ("Defendant's Response") (Doc. No. 133) and Plaintiff filed a

ORDER – PAGE 1

Reply in Support ("Reply") (Doc. No. 136).  The Court has carefully considered both Defendant's Motion and Plaintiff's Motion, the responses, the replies, the supporting appendices, any relevant portions of the record, and the applicable law.

The Court **GRANTS** Plaintiff's Motion for summary judgment on Defendant's counterclaim for Harmful Access by Computer in Violation of § 33.02 of the Texas Penal Code.  The Court **DENIES** Plaintiff's Motion for summary judgment on Defendant's affirmative defense of fair use but **GRANTS** Plaintiff's Motion for summary judgment on Defendant's eleven other affirmative defenses.  The Court **DENIES** Plaintiff's Motion for summary judgment on Defendant's liability for copyright infringement because there is a material fact question on the substantial similarity element of actionable copying to establish copyright infringement.

The Court **DENIES** Defendant's Motion for summary judgment on Plaintiff's claims for copyright infringement and for violations of the Digital Millennium Copyright Act because, again, there is a material fact question on substantial similarity. Defendant's Motion for summary judgment on Plaintiff's claim for violation of Computer Fraud and Abuse Act **will be GRANTED** unless Plaintiff dismisses this claim, as represented in its Response, **no later than 21 days** of this Memorandum Opinion and Order issuing.

ORDER – PAGE 2

I.       **Factual and Procedural Background**

All page citations to the parties' briefing and any relevant record document is to the CM/ECF page number.  Plaintiff Widespread Electrical Sales, LLC, ("Plaintiff"), founded by Scott Vaughn in 2008, provides power distribution products for residential, commercial, and industrial applications.  Doc. No. 126 at 8-9; Doc. No. 127 at 5.  In creating the company, Mr. Vaughn methodically chose, based on his years of experience, the products Plaintiff would sell, "focusing on customers with specific needs for obsolete, obscure, or specialized electrical products."  Doc. No. 126 at 9; Doc. No. 127 at 5, 6.  Mr. Vaughn also recognized an opportunity to sell products online and, Plaintiff began building out its website, WidespreadSales.com ("Plaintiff's "Website"), in 2008-2009.  Doc. No. 126 at 9; Doc. No. 127 at 5-6, 271; *see also* Doc. No. 127 at 10 ("WidespreadSales.com now forwards to Electrical.com. Because the substantive content on Electrical.com is the same as what used to be (and still is) on WidespreadSales.com, I refer to both websites herein as Widespread's 'Website.'"); *id.* at 302 (Plaintiff began using the domain name "Electrical.com" in September 2021).

On Plaintiff's Website, visitors can view "product pages" which provide specific information about the particular product, including part number, product description, product specifications, and photographs.  Doc. No. 127 at 6, 273.  Mr. Vaughn strategically chose the products Plaintiff would sell, excluding those seen as

"unprofitable, undesirable, or outside of [Plaintiff's] core marketing strategy." *Id.* at 6, 279.  Mr. Vaughn himself "spent countless hours typing out content for product pages" and accumulating product information, including part numbers.  *Id.* at 6, 273-74, 276.  Ultimately, Plaintiff created its database, "one keystroke at a time", of "hundreds of thousands of products" available to customers on its Website.  *Id.* at 6, 275, 296; *see also id.* at 276.  Plaintiff also created and included "several thousand" fake products on its Website to help detect copying of its data.  *Id.* at 280, 305.

Plaintiff intended to protect its Website and its database of content through copyright laws.  *Id.* at 275, 320, 321.  To that end, Plaintiff applied for and received four copyright registrations for the following works: (1) "Group Registration for automated database entitled Widespread Electrical Sales Product Database; Published updates from 7/1/2015-9/30/2015; representative date: 9/30/2015," registration no. TX 8-594-234; (2) "Group Registration for automated database entitled Widespread Electrical Sales Product Database; Published updates from 8/1/2016-10/31/2016; representative date: 10/31/2016, updated daily," registration no. TX 8-555-527; (3) "Group Registration for automated database entitled Widespread Electrical Sales Product Database; Published updates from 11/1/2016-12/31/2016; updated daily," registration no. TX 8-730-625; and (4) "Group Registration for automated database entitled Widespread Electrical Sales Product Database; Published updates from

4/1/2017-6/30/2017; representative dates: 4/1/2017 and 6/30/2017, updated daily," registration no. TX 8-555-531.  *Id.* at 11-12, 18-28, 192-206.

In 2015, Plaintiff added a Website Use Agreement, located at the bottom of every page of its Website.  *Id.* at 258, 282, 306.  This Website Use Agreement includes, among other things, information about Plaintiff's copyrights and a prohibition of any form of copying or transferring of Plaintiff's Website content, including through "scraping".  *Id.* at 256; *see* Doc. No. 126 at 13.  Plaintiff's Website also includes on every page a separate, explicit prohibition of "scraping", "spidering", or otherwise transferring its Website content.  Doc. No. 127 at 258; *see* Doc. No. 126 at 13.

In 2013, Defendant Upstate Breaker Wholesale Supply, Inc. ("Defendant") was founded by Adam Schneider, who remains its owner.  Doc. No. 127 at 342.  Like Plaintiff, Defendant also sells electrical equipment. *Id.* at 345.  Defendant built out a second website, BuyMyBreaker.com ("Defendant's Website"), when Mr. Schneider realized "[t]here is more of a profit" selling to customers directly through its own website.  *Id.* at 347, 348.  In order to populate the product pages on Defendant's Website, Mr. Schneider admittedly used WebHarvey, a "scraping tool", to copy "the text data from the pages" of Plaintiff's website.  *Id.* at 349-56.  Visiting Plaintiff's Website multiple times, Mr. Schneider copied "general information of product[sic]", "the product specifications", and "the product descriptions", although he denies

scraping the product photographs.  *Id.* at 355-56, 358.  Mr. Schneider testified that he "put" the scraped information into the template on Defendant's own website.  *Id.* at 357.  Mr. Schneider testified at his deposition that he does not recall copying information from any other website  *Id.* at 352.

In July 2020, Plaintiff realized Defendant had copied hundreds of thousands of Plaintiff's product pages to Defendant's Website.  Doc. No. 127 at 13; *see also* Doc. No. 126 at 18.  Plaintiff asserts that Defendant constructed the product pages on Defendant's own Website with the scraped information to and "every product page . . . is nearly or exactly identical to [Plaintiff's] corresponding Copyright Material."  Doc. No. 126 at 14; *see id.* at 27 (citing Doc. No. 127 at 357); *see also* Doc. No. 127 at 13.  Defendant's product pages include "thousands of fake parts" Plaintiff had placed on its Website to detect copying.  *See* Doc. No. 127 at 14, 324.

On August 27, 2020, Plaintiff sued Defendant in this Court for copyright infringement, violation of the Computer Fraud and Abuse Act (the "CFAA"), violation of the Digital Millennium Copyright Act (the "DMCA"), Harmful Access by Computer, and breach of contract.  *See generally* Compl. (Doc. No. 1).  Defendant asserts a counterclaim against Plaintiff for Harmful Access by Computer.  The Court previously denied Defendant's motion to transfer venue, *see* Doc. No. 37, and denied in part and granted in part Defendant's motion to dismiss, *see* Doc. No. 38.  Plaintiff amended its

complaint in response, *see* Doc. No. 44, and then amended a second time, *see* Doc. No. 74, with leave of the Court, *see* Doc. No. 72.  The Court turns now to the parties' cross-motions for partial summary judgment.

## II.    Summary Judgment Standard

"Summary judgment is required when 'the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed.R.Civ.P. 56(a)).  A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the moving party will have the burden of proof on a claim, "the party 'must establish beyond peradventure all of the essential elements of the claim.'"  *Eguchi v. Kelly*, Civ. Action No. 3:16-CV-1286-D, 2017 WL 2902667, at *1 (N.D. Tex. July 7, 2017)(Fitzwater, J.) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th 1986)).  "This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the moving party is entitled to summary judgment as a matter of law."  *Id.* (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).  "[T]he 'beyond peradventure' standard is 'heavy.'"  *Id.* (internal citations omitted).

Once the movant satisfies his burden, the nonmovant may not rest on the pleadings, but must present competent summary judgment evidence showing a genuine fact issue for trial exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc).  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)(en banc) (nonmovant may satisfy this burden by providing depositions, affidavits, and other competent evidence, not with "conclusory allegations, speculation, and unsubstantiated assertions.").  If the nonmovant fails to meet this burden, summary judgment must be granted.  *Celotex*, 477 U.S. at 322.

All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co.*, Inc., 402 F.3d 536, 540 (5th Cir. 2005); *see also Canadian Standards Assoc. v. P.S. Knight Co., Ltd.*, 649 F. Supp. 3d 334, 345 (W.D. Tex. 2023) ("When ruling on cross motions for summary judgment, 'the court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the

light most favorable to defendant when considering plaintiff's motion.'") (quoting *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019)).

## III.   Analysis

The parties filed cross-motions for partial summary judgment.  In its Motion, Plaintiff contends it is entitled to summary judgment on: (1) Defendant's liability for Plaintiff's copyright infringement claim; (2) Defendant's counterclaim for violation of Harmful Access by Computer Act; and (3) each of Defendant's twelve affirmative defenses.  By its Motion, Defendant also seeks summary judgment on Plaintiff's copyright infringement claim, arguing Plaintiff cannot establish substantial similarity between its copyrightable works and Defendant's work.  Defendant also argues it is entitled to summary judgment on Plaintiff's claim for violation of the DMCA because there is no copyright infringement and for Plaintiff's claim for violation of the CFAA because the scraped data was publicly available.

The Court has viewed the summary judgment evidence in the light most favorable to Plaintiff when considering Defendant's Motion and in the light most favorable to Defendant when considering Plaintiff's Motion.  *See Canadian Standards*, 649 F. Supp. 3d at 345.

A.       **Copyright Infringement**

1.       **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff states that its owns four valid copyrights which "cover the text of [Plaintiff's] Website, including the product specifications, product descriptions, similar products, accessories, and certain product numbers on the product pages, as well as [Plaintiff's] compilation of product pages as a whole." Doc. No. 126 at 12. Plaintiff argues that the summary judgment evidence conclusively establishes Defendant copied the protected works because Mr. Schneider, Defendant's owner and corporate representative, admits copying Plaintiff's website. *Id.* at 26-28 (citing Doc. No. 127 at 352, 353, 355-56, 359). Further, according to Plaintiff, the summary judgment evidence also shows there is substantial similarity between Plaintiff's protected works and Defendant's infringing works based on a side-by-side comparison, and no jury could find otherwise. *Id.* at 28-30. For these reasons, Plaintiff asserts it is entitled to summary judgment on Defendant's liability for copyright infringement. *Id.* at 30-31.

In response, Defendant contends that Plaintiff's summary judgment argument on copyright infringement fails for three reasons. First, Plaintiff cannot show "it has a valid copyright in the product pages it alleges [Defendant] copied." Doc. No. 133 at 6-7. Defendant asserts that Plaintiff has a copyright only in the published updates to its database but not in the preexisting database on which its copyrighted updates are

based.  *Id.* at 7.  Defendant argues there is no copyright in Plaintiff's "total database" or "compilation of product pages as a whole", and Plaintiff fails to prove that any of the product pages Defendant did copy actually fall within the very limited copyrighted updates.  *Id.* at 8 (internal quotations omitted).  Even if Plaintiff has valid copyrights in its works, Defendant argues Plaintiff cannot show substantial similarity between the protected works and the copied works.  *Id.* at 9.  Defendant contends that Plaintiff's product pages and the product information are merely compilations of facts, not original works of authorship, and Defendant copied only the facts, not Plaintiff's selection and arrangement of the compilation, and copyright law does not protect facts.  *Id.*  9-12.  Defendant argues a side-by-side comparison of Plaintiff's protected works and Defendant's copied works does not establish substantial similarity.  *Id.* at 9-19.  Finally, Defendant contends that, even if the Plaintiff's summary judgment evidence does establish copyright infringement, Defendant's fair use of the copyrighted works is a complete defense.  *Id.* at 20-25.

In its Reply, Plaintiff reasserts that it owns valid copyright registrations covering its entire database, both the preexisting database as well as the published updates, and the product pages Defendant copied are covered by these copyright registrations.  Doc. No. 136 at 2-5.  Plaintiff further contends that each element of its product pages and compilations are copyrightable and that Defendant's works are substantially similar to

Plaintiff's protected works. *Id.* at 6-12. Finally, Plaintiff argues that Defendant's fair use defense fails "most importantly" because Defendant used the copied works "to directly compete against [Plaintiff]." *Id.* at 13.

### 2.    Defendant's Motion for Partial Summary Judgment

In its Motion, Defendant states that, "[f]or purposes of this motion, [Defendant] does not dispute the first two elements: [Plaintiff's ownership of a valid copyright in its compilation of part information and [Defendant's] copying of that compilation." Doc. No. 122 at 11-12. Defendant argues it is entitled to a finding a noninfringement because there is no substantial similarity, the third element of copyright infringement. *Id.* at 12. Defendant contends that "only the selection and arrangement of product information" in Plaintiff's compilation is protectable material and Defendant arranged this information differently than Plaintiff and copied "facts from only a limited portion of [Plaintiff's] product pages." *Id.* at 13. Defendant argues that there is no substantial similarity between the protectable parts of Plaintiff's copyrighted works and Defendant's product pages. *Id.* at 13.

Plaintiff responds that there is substantial similarity between its copyrighted works and Defendant's infringing works. Doc. No. 134 at 18-19. Refuting Defendant's argument that only the selection and arrangement of product information is protectable, Plaintiff contends each element on every product page as well as its

ORDER – PAGE 12

compilation of all product pages are copyrightable. *Id.* at 21. Plaintiff asserts that a side-by-side comparison is unnecessary because Defendant's extensive copying of the protected works was verbatim. *Id.* at 19-20. But, even if the Court concludes a side-by-side comparison is required, Plaintiff asserts every component, including the text and the template, of the product pages on Defendant's Website is substantially similar to Plaintiff's copyrighted works. *Id.* at 28-29. Plaintiff further argues that Defendant's compilation of product pages is substantially similar to Plaintiff's Website which is protected by its copyright. *Id.* at 29-32.

In its Reply, Defendant maintains its position that only Plaintiff's "selection and arrangement" of its product information is subject to copyright protection. Doc. No. 135 at 8; 10-18. Defendant further asserts there was no "verbatim copying" of Plaintiff's product pages and the product pages on Defendant's website are not virtually identical to those on Plaintiff's Website. *Id.* at 18-19. Finally, Defendant maintains that a side-by-side comparison of Plaintiff's protected works and Defendant's copied works is required under Fifth Circuit precedent, and such a comparison cannot prove substantial similarity. *Id.* at 19-22.

### 3.   Applicable Law

To prove a claim for a copyright infringement claim, the plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the

work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994); *accord Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 702 (W.D. Tex. 2013) (citing *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 811 (5th Cir. 1989)). A Certificate of Registration of the copyright "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995); *but see also Norma Ribbon*, 51 F. 3d at 47 (presumption of a copyright's validity created by a certificate is a rebuttable presumption) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 n.10 (5th Cir, 1991)).

To establish the second element, the plaintiff must show actionable copying, which consists of both "factual copying" and "substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015); *Gen. Universal Sys., Inc. v. Lee*, 379 F3d 131, 141 (5th Cir. 2004). Factual copying can be shown by direct evidence of copying or it can be inferred by proof of the defendant's access to the original work and probative similarity. *Batiste v. Najm*, 28 F.Supp.3d 595, 599 (E.D. La. 2014). Even where there is factual copying, copyright infringement is not

conclusively shown.  *See also Feist*, 499 U.S. at 361 ("Not all copying, however, is copyright infringement.").  The plaintiff must also show substantial similarity between the copyrighted work and the infringing work.  *Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001); *accord Eng'g Dynamics*, 26 F.3d at 1341.  "A side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar'."  *Lee*, 379 F.3d at 142 (quoting *Creations Unlimited v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (per curiam)); *accord Peel*, 238 F.3d at 395.

"While the question of substantial similarity 'typically should be left to the factfinder, summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity.'"  *Nola Spice Designs*, 783 F.3d at 550 (quoting *Peel*, 238 F.3d at 395); *accord Lee*, 379 F.3d at 142.  Although courts generally agree that non-infringement may be determined as a matter of law on summary judgment, "a finding of infringement is generally inappropriate at the summary judgment stage."  *Am. Registry*, 939 F. Supp. 2d at 707; *see also Flowserve Corp. v. Hallmark Pump Co., Inc.*, No. 4:09-CV-0675, 2011 WL 1527951, at *4 (S.D. Tex. Apr. 20, 2011) ("While there is agreement that *non-infringement* may be determined as a matter of law, there are few instances in which

courts in the Fifth Circuit have granted summary judgment in favor of a plaintiff on a copyright infringement claim."). Summary judgment in favor of the plaintiff may be justified "'when the similarities between plaintiff's and defendant's works are so overwhelming as to preclude the possibility of independent creation.'" *Flowserve*, 2011 WL 1527951, at *4 (quoting *Wood v. B L Bldg. Co.*, Civil Action No. H-03-713, 2004 WL 5866352, at *9 (S.D. Tex. June 22, 2004)).

### 4.    Analysis

Because the parties' arguments on copyright infringement overlap in large part, the Court will consider the parties' arguments together in analyzing this claim.

### a.    Validity of Plaintiff's Copyrights

The Court turns first to which, if any, of Plaintiff's works are eligible for copyright protection. Plaintiff must prove originality and copyrightability of the works it argues were unlawfully copied and also its compliance with the statutory formalities. *See Norma Ribbon*, 51 F.3d at 47. A copyright registration certificate is *prima facie* evidence of the validity of the copyright, although this presumption of validity is a rebuttable one. *See id.*

Plaintiff argues it owns valid copyrights covering "(1) each of [Plaintiff's] 'product pages;' and (2) [Plaintiff's] 'database,' comprising the full collection of [Plaintiff's] product pages." Doc. No. 126 at 21; *see also* Doc. No. 134 at 21 (addressing

ORDER – PAGE 16

the "protectable elements" of its work, Plaintiff asserts that "each component of [Plaintiff's] product pages, as well as [Plaintiff's] compilation of product pages as a whole, are copyrightable[.]").  Plaintiff describes its product pages as listing "the product, a product description, product accessories, similar products, and a table of product specifications."  Doc. No. 126 at 21.  Plaintiff defines its database as "the aggregate of all of [Plaintiff's] product pages, categorized into different types of products and searchable through search bar or the use of various filters."  *Id.*  As *prima facie* evidence of the validity of its copyrights, Plaintiff submits its Copyright Registration Certificates ("Copyright Certificates") as part of its summary judgment evidence.  *See* Doc. No. 127 at 192-206.

Defendant responds that Plaintiff does not own copyrights covering all of its product pages; rather, Plaintiff's Copyright Certificates expressly cover only the "published updates" to the database for the relevant time period and specifically exclude the "preexisting database".  Doc. No. 133 at 7.  According to Defendant, Plaintiff must "also ha[ve] a copyright in the preexisting works" to bring a copyright infringement claim related to those works, and it does not.  *Id.* (citing *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 269 n.28 (5th Cir, 2014)).  Defendant submits that Plaintiff's own summary judgment evidence "*disprove[s]* its contention that it has a copyright in its 'compilation of product pages as a whole.'"  *Id.* at 8.  Defendant

ORDER – PAGE 17

asserts that Plaintiff fails to identify specific product pages Defendant copied that are part of a published update and, because Plaintiff "does not have a valid copyright in the materials [Defendant] copied", Plaintiff cannot prove infringement and this claim fails as a matter of law.  *Id.*

The numerous rights accorded to the author of an original work under the Copyright Act vest at the time the work is created.  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546-47 (1985) (citing 17 U.S.C. § 106); *see also* § 408(a) (copyright registration "is not a condition of copyright protection.").  Nevertheless, the Copyright Act requires registration of the copyright prior to initiating a copyright infringement suit.  § 411(a).  Here, Plaintiff has Copyright Registrations in the published updates (for the relevant time periods) and these derivative works are based on the preexisting works which it created and owns.  In *Aspen Technology*, the Fifth Circuit directly rejected Defendant's argument that Plaintiff must own a copyright in the preexisting works.  *Aspen Tech.*, 569 F. App'x at 269.  Despite Defendant's argument to the contrary, the case law of this Circuit does not require that the copyright registration identify the preexisting material as a predicate for bringing a copyright infringement claim.  "Where the owner of a derivative work also owns the underlying work on which the derivative work is based, registration of the derivative work alone is sufficient to bring suit for infringement of elements contained in both." *Lennar Homes*

ORDER – PAGE 18

*of Tex. Sales* & *Mktg., Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 927 (S.D. Tex. 2015); *see also Aspen Tech.*, 569 F. App'x at 269.   Defendant did not submit summary judgment evidence rebutting that Plaintiff is the author and owner of the preexisting database.   Plaintiff's summary judgment evidence, on the other hand, clearly establishes it is the author and owner of the preexisting work.   *See, e.g.,* Doc. No. 127 at 5-6, 273-76, 279.   Accordingly, Plaintiff, as the owner of both the derivative work and the preexisting work on which it is based, may bring suit for infringement of the protectable elements in both works.   *See Aspen Tech.*, 569 F. App'x at 269; *Lennar Homes*, 117 F. Supp. 3d at 927.

### b.      Originality and Copyrightability

The Court's inquiry does not end there because "the mere fact that [a plaintiff's works] are copyrighted does not mean that all aspects of those materials are automatically protected." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir. 1994) (citing *Feist*, 499 U.S. at 348-49); *see Batiste v. Najm*, 28 F. Supp. 3d 595, 600 (E.D. La. 2014).   "A valid copyright extends only to copyrightable subject matter." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 411 (2017).   The Court turns now to which of Plaintiff's works, or elements therein, are in fact protected by copyright.

ORDER – PAGE 19

Plaintiff argues its valid copyrights cover "each of [Plaintiff's] 'product pages'" which include "the product, a product description, product accessories, similar products, and a table of product specifications." Doc. No. 126 at 21. The product descriptions, accessories and similar products, and part numbers on the product pages are likewise protected by copyright, according to Plaintiff, because they are original works of authorship. *Id.* Plaintiff contends that the product specifications on each product page are protected as compilations of fact. *Id.* at 22. Finally, Plaintiff argues its valid copyrights protect its "database", which Plaintiff defines as "the aggregate of all of [its] product pages, categorized into different types of products and searchable through search bar or the use of various filters." *Id.* at 21. Plaintiff asserts the same argument in its Response to Defendant's Motion. Doc. No. 134 at 21 (addressing the "protectable elements of Plaintiff's work", Plaintiff maintains that "each component of [Plaintiff's] product pages, as well as [Plaintiff's] compilation of product pages as a whole, are copyrightable[.]").

Defendant states that Plaintiff owns a valid copyright in its compilation of product information, but argues that the product information itself is not copyrightable as original authorship because it is merely facts. Doc. No. 122 at 12-14. "[O]nly the selection and arrangement of product information" on Plaintiff's product pages is

ORDER – PAGE 20

protectable by copyright laws and Defendant argues that it copied only the underlying facts which are not protected.  *Id.* at 13-16.

It is well-established law that "facts are not copyrightable" because "[t]o qualify for copyright protection, a work must be original to the author" and "facts do not owe their origin to an act of authorship."  *Feist*, 499 U.S. at 344-45, 347.  Facts "'are part of the public domain available to every person.'"  *See id.* at 347, 348 (quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1368 (5th Cir. 1981)).  However, "[a] factual compilation is eligible for copyright if it features an original selection or arrangement of facts[.]"  *Id.* at 350-51; *see id.* at 347 (the different treatment accorded to facts and factual compilations lies in the "distinction . . . between creation and discovery" in that "one who discovers a fact is not its 'maker' or 'originator.'").  "The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers."  *Id.* at 348.  Thus, compilations may "meet[] the constitutional minimum for copyright protection" where the "choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original[.]"  *Id.*; *see id.* (because originality is "the *sine qua non* of copyright. . ., copyright protection may extend only to those components of a work that are original to the author." (internal citation omitted).  However, if the compiler

"lets the facts speak for themselves" and does not add written expression, "the expressive element is more elusive." *Feist*, 499 U.S. at 349.  For these reasons, "copyright in a factual compilation is thin." *Id.*

To be sure, "[n]o matter how original the format . . . *the facts themselves do not become original through association*." *Id.* (emphasis added) (internal citation omitted). Others may freely use the facts in the original compiler's work to create a competing work as long as it does not include the compiler's same selection and arrangement. *Feist*, 499 U.S. at 349.  "No matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking . . . . The very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas." *Id.* (quoting Ginsburg, Creation and Commercial Value: Copyright Protection of Works of Information, 90 Colum.L.Rev. 1865, 1868 (1990)); *see Harper* & *Row*, 471 U.S. at 548 ("[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original . . . as long as such use does not unfairly appropriate the author's original contributions.").  To sum up copyright protection as it pertains to facts and factual compilations,

> Facts, whether alone or as part of a compilation, are not original and
> therefore may not be copyrighted.  A factual compilation is eligible
> for copyright if it features an original selection or arrangement of
> facts, but the copyright is limited to the particular selection or

>       arrangement.   In no event may copyright extend to the facts
>       themselves.

*Id.* at 350-51.

The Court now determines whether Plaintiff's works, or any elements therein, are protectable by its valid copyrights.  Because Plaintiff alleges Defendant infringed over 651,000 product pages from its Website, Plaintiff submits a "representative sample" of its product pages along with the corresponding product pages from Defendant's Website.  Doc. No. 126 at 17 n.7; *see* Doc. No. 127 at 213-254.  Plaintiff also submits a spreadsheet "summarizing the list of [Defendant's] infringing product pages".  *See* Doc. No. 127 (Ex. C-5) at 281; *see also id.* (Ex. C-6) at 288.

### 1) Product Descriptions

Plaintiff asserts that its product descriptions, which are included on each product page, are themselves copyrightable as original works. Plaintiff cites the deposition testimony of Winston Krauss, Plaintiff's President, and the sworn declaration of Mr. Vaughn in support of its argument that these product descriptions were "independently drafted" and "crafted" "in a particular manner and order to present information most relevant to [Plaintiff's] customers."  Doc. No. 126 at 21; *see also* Doc. No. 136 at 7. Mr. Krauss testifies that the descriptions "are not a template of specific specifications that are the same across all products."  Doc. No. 127 at 313.  The descriptions have "variances" as to the layout of the information based on what the most "relevant

information" is according to Plaintiff's "industry knowledge and experience with customers". *Id.*; *see id.* at 7.  The product descriptions were formatted "in a particular manner and order to present information most relevant to its customers." *Id.*; *see also* Doc. No. 134 at 21.  Defendant responds that these descriptions are not sufficiently original and are, instead, merely facts.  Doc. No. 133 at 11.

The Court agrees with Defendant.  Upon reviewing the sample of product pages in the summary judgment record, it is apparent that the "product description" is essentially a listing of the particular product's factual specifications, including functional and technical data, arranged in a "description" format with no original written expression.  Doc. No. 127 at 213-230; *see also id.* at 314.  Plaintiff's summary judgment evidence, in fact, establishes that the product descriptions of factual specifications were "compiled" "from numerous sources, including old catalogs . . , conversations with customers and others in the industry, and physical inspection of products."  Doc. No. 127 at 7; *see, e.g., id.* at 315 (Mr. Krauss testifying that, on the product page, "the arrangement of the facts in our [product] description is unique."), 319 (Mr. Krauss testifying "that some of underlying information here [in the product descriptions] is definitely derived from manufacturer specifications.").  As such, this product information is certainly part of "the public domain" and facts such as this data may not be copyrighted.  *Feist*, 499 U.S. at 348.  Mr. Vaughn's discovery of the factual

data about the particular product does not render him the "maker"' or "originator" of the information. *See id.* at 347. Further, words and short phrases which describe a product's "functional considerations" and "technical terms" are not copyrightable. *Advanta-STAR Auto. Rsch. Corp. of Am. v. DealerCMO, Inc.*, Civ. Action No. 20-1150, 2022 WL 179466, at *6-7 (E.D. La. Jan. 20, 2022). Plaintiff presents no summary judgment evidence that any of the information in the product description is Plaintiff's "original, creative expression". *See Eng'g Dynamics*, 26 F.3d at 1344; *see also Feist*, 499 U.S. at 348.

Plaintiff's attempt to characterize these product descriptions as "lengthy narratives" and something akin to a taxonomy fails. *See* Doc. No. 136 at 7; Doc. No. 134 at 22. Plaintiff cites to *American Dental Association v. Delta Dental Plans Association* in asserting that it "crafted the descriptions in a particular manner and order" for its customers and, therefore, these product "descriptions are works of original authorship entitled to protection." Doc. No. 126 at 21 (citing 126 F.3d 977 (7th Cir. 1997)). In that case, the Seventh Circuit determined the *Code on Dental Procedures and Nomenclature* (the "*Code*"), a taxonomy created by a committee of the American Dental Association (the "ADA") classifying and describing dental procedures, was copyrightable as "an 'original work of authorship'". *Am. Dental Assoc.*, 126 F.3d at 978-80; *see also id.* ("A taxonomy is a way of *describing* items in a body of knowledge or practice; it is not a

collection or compilation *of* bits and pieces of 'reality'."). The Seventh Circuit explained that the *Code* "could be a compilation only if its elements existed independently and the ADA merely put them in order." *Id.* at 980. But the appellate court held that the *Code* was not a compilation having determined that the descriptions and classifications were created by the ADA and not imposed "by some 'fact' about dental procedures." *Id.* at 979.

Here, Plaintiff does not establish that the product descriptions contain anything other than facts which exist independently and which Plaintiff "merely put . . . in order." *Id.* at 980. Plaintiff does not explain, let alone show by its summary judgment evidence, that these product "descriptions don't 'merge with the facts'" already existing about the product or that they are Plaintiff's own unique way of "*describing*" these "items in a body of knowledge or practice[.]" *Id.* at 989, 990.

Certain product descriptions do contain the phrase "this [product] is now obsolete; however, we do still stock them." Doc. No. 127 at 211, 212, 218. Plaintiff fails to demonstrate by its summary judgment evidence any creativity which can be attributed to this phrase. *See Advanta-STAR*, 2022 WL 179466, at *7 ("Critically, plaintiff never explains why its comparisons of warranties in terms of years and milage are sufficiently original to warrant copyright protection, and why they are not instead

a mere list of features likely to be found in any car review or comparison.").  As a sister court explained,

> [S]ingle words and short phrases are not entitled to protection. This is especially true in the factual context, where "even verbatim reproduction of single words, ordinary phrases, and phrases typically expressed in a limited number of stereotyped fashion, may not establish infringement of a fact work . . . because in many cases such short phrases are not sufficiently expressive to merit protection and because protecting some short phrases is tantamount to protecting the idea itself."

*Id.* at * 5 (internal citation omitted).  The Court determines this phrase is not original expression protected by copyright because it is a short phrase that is ordinary and which can be expressed in limited number of ways.  *See CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519-20 (5th Cir. 1996) ("It is axiomatic that copyright law denies protections to 'fragmentary words and phrases' . . . on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection."); *see also Perma Greeting, Inc. v. Russ Berrie & Co., Inc.*, 598 F. Supp. 445, 448 (E.D. Mo. 1984) ("Clichéd language, phrases and expressions conveying an idea that is typically expressed in a limited number of stereotypic fashions, are not subject to copyright protection.").

     The product descriptions contained in the sample of Plaintiff's product pages in the summary judgment record are "simply factual descriptions" of certain features of that part "and fundamental to any description" of the part, or they are merely words

ORDER – PAGE 27

and short phrases describing "functional considerations" and "technical terms" of the product, none of which are protected by copyright as original works. *Advanta-STAR*, 2022 WL 179466, at *6-7 (quoting *Kohus v. Mariol*, 328 F.3d 848, 856 (5th Cir. 2003)). "It is axiomatic that copyright law denies protections to . . . 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." *CMM Cable*, 97 F.3d at 1519 (quoting 1 Nimmer, § 2.01[B], at 2-13-18). Plaintiff fails to establish that the product descriptions are original authorship rather than a compilation of facts which "may not be copyrighted". *Feist*, 499 U.S. at 348.

Plaintiff's selection and arrangement of the facts comprising these product descriptions may nevertheless be protected by copyright, *see Feist*, 499 U.S. at 348, and Defendant concedes as much for purposes of summary judgment, *see* Doc. No. 122 at 12. Copyright protection in compilations "extend[s] to the creative elements of compilations of facts", which includes "the selection and arrangement of information that enable effective use." *S. Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C.*, 946 F.3d 780, 783 (5th Cir. 2020). Plaintiff's summary judgment evidence demonstrates originality in the selection and arrangement of the product descriptions. *See, e.g.,* Doc. No. 127 at 4 (Plaintiff "drafted and created" the product descriptions that appear on each product page and did so "in a manner and order to

ORDER – PAGE 28

present information most relevant to customers."), 315 (Mr. Krauss testifying that, on the product page, "the arrangement of the facts in our description is unique."), 388-97 (sample screenshots of Plaintiff's competitors' websites showing that its competitors compile and arrange industry-standard product information in different ways than Plaintiff); *see also S. Credentialing*, 946 F.3d at 784 ("Such differentiation within the industry demonstrates originality.").  Plaintiff establishes that it chose the selection and arrangement of the information contained its product descriptions independently and with at least "a minimal degree of creativity"; therefore, the product descriptions are entitled to copyright protection as a compilation.  *See Feist*, 499 U.S. at 348.

In conclusion, the Court finds that Plaintiff's product descriptions are not themselves protected by copyright as original works of authorship.  The Court does find, however, that Plaintiff establishes at least a minimal degree of creativity in its original selection and arrangement of the information in the product descriptions, although not in the underlying information itself, and so they are eligible for copyright protection as compilations.  *See id.* at 349 ("Thus, if the selection and arrangement [of the facts] are original, these elements of the work are eligible for copyright protection."); *S. Credentialing*, 946 F.3d at 784.

ORDER – PAGE 29

<u>2) Accessories and Similar Products</u>

Plaintiff also argues that "the product accessories and similar product sections on each [of Plaintiff's] product page are copyrightable." Doc. No. 126 at 22. Plaintiff contends that, for each product page, it "independently identified" any compatible accessories for the respective product and, likewise, found similar products. *Id.* Plaintiff claims that it "selected which accessories and similar products" to put on the product page for its customers and these "independent formulations" are original authorship and, therefore, protected by its copyrights. *Id.* The Court disagrees. Neither the accessories nor the similar products that Plaintiff identifies satisfy the originality requirement of copyright protection. *See Feist*, 499 U.S. at 347-48. As with the product descriptions discussed above and for all the same reasons, the "accessories" section and "similar products" section are compilations to be sure. In these sections on the product pages, Plaintiff merely selects and arranges related accessories and products that exist independently. "The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Id.* at 348. Plaintiff does establish at least a minimal degree of creativity in its original selection and arrangement of the facts in the "product accessories and similar product sections". *See* Doc. No. 127 at 4, 8; *see also* Doc. No. 122 at 11-12 (Defendant does not dispute Plaintiff's valid copyrights in

its compilation of product information).   Therefore, Plaintiff's selection and arrangement of "product accessories" and "similar products" are eligible for copyright protection as compilations.  *See S. Credentialing*, 946 F.3d at 784.

### 3) Part Numbers

Plaintiff also argues that the "tens of thousands" of part numbers it created for products in its database are original authorship and protected by copyright.  Doc. No. 126 at 21, 22.  Defendant responds that courts have specifically held that part numbers are not copyrightable because they lack originality.  Doc. No. 133 at 11.  In its Reply, Plaintiff asserts that the requisite creativity is demonstrated because it "formulated these part numbers based on its determination of how customers might search for them online and how [Plaintiff] could best be found for those searches."  Doc. No. 136 at 8.

The Fifth Circuit has not yet addressed whether part numbers are protected by copyright law.  Other circuit courts have addressed this and the Court finds those holdings instructive.  *See Southco, Inc. v. Kanesbridge Corp.*, 390 F.3d 276, 285 (3rd Cir. 2004)(en banc)(Alito, J.) ("[P]art numbers are also excluded from copyright protection because they are analogous to short phrases or the titles of works."); *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 707-08 (6th Cir. 2005) (holding that part numbers are not eligible for copyright protection because "the mere fact that numbers are attached to, or are a by-product of categories and

descriptions that are copyrightable does not render the numbers themselves copyrightable."); *see also Southco*, 390 F.3d at 282 ("'[B]asic copyright principles' lead to the conclusion that copyright protection should not be extended to part numbers that represent 'an inevitable sequence dictated by the logic of the parts system.'" (quoting 1 WILLIAM F. PATRY, COPYRIGHT LAW AND PRACTICE 46 (2d ed. 2004)); *Toro Co. v. R & R Prods. Co.*, 787 F.2d 1208, 1212 (8th Cir. 1986); *cf. Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1373-74 (10th Cir. 1997) (finding the random and arbitrary combination of numbers, which are in the public domain, "required de minimus effort.").

Here, Plaintiff submits that it "created 'tens of thousands' of part numbers for products for which 'part numbers don't exist,' including products composed by assembling various components, products manufactured without a naming nomenclature, and 'fake products' inserted by [Plaintiff] into its database to detect infringement." Doc. No. 126 at 22 (cleaned up). On this summary judgment record, the Court concludes that none of Plaintiff's part numbers are eligible for copyright protection.

First, the Court notes that Plaintiff does not identify any part numbers it claims to have created whether for a real product or a fake product. That aside, part numbers which came from public sources (*e.g.*, catalogs) are not protected by copyright. *See Feist*,

ORDER – PAGE 32

499 U.S. at 348 (facts "may not be copyrighted and are part of the public domain available to every person."). Mr. Vaughn testified in deposition that he obtained certain part numbers from "different sources", such as "a PDF cut sheet", "catalogs", or "information off of a [product] label." Doc. No. 127 at 274. It is clear these part numbers are not original works.

Plaintiff also claims it created part numbers for "tens of thousands" of products that did not have one. Doc. No. 126 at 22. For some of these products, Plaintiff created a part number using the manufacturer's "'base' part numbers" and "separate codes for modifications, configurations, and variations." *Id.* at 10 (citing Doc. No. 127 at 301); *see* Doc. No. 127 at 6. Plaintiff's own evidence confirms that these numbers were not the result of Plaintiff's creative expression but were, instead, dictated by the manufacturer's guidelines." Doc. No. 127 at 301 (Mr. Krauss testifying that, where Plaintiff created a "final part number" based on "the combination of potential parts", Plaintiff "kind of [had] to compile it based on the guidelines from the manufacturer."); *see also Southco*, 390 F.3d at 282 (holding that part numbers were "not 'original' because each number is rigidly dictated by the rules of the [manufacturer's] system"). There is no evidence before the Court that these part numbers possess even the "minimal degree of creativity" to satisfy the originality requirement. *See Southco*, 390 F.3d at 284-85

ORDER – PAGE 33

(part numbers lacked "even a spark of creativity" as they "are purely functional" and "convey information about a few objective characteristics of mundane products").

For yet other products with no part number, Plaintiff argues it "created a nomenclature based on abbreviations and shorthand that it believed customers might search for online."  Doc. No. 127 at 6.  Plaintiff claims original authorship in creating these part numbers.  There are fatal flaws with this argument. Beyond making this broad statement, Plaintiff never explains the process for creating these numbers and does not provide any summary judgment evidence demonstrating even the slightest creative expression in these part numbers (which again Plaintiff does not identify). *See ATC Distrib.*, 402 F.3d at 707-08 (6th Cir. 2005) (concluding that, even "assuming, *arguendo*, that some string of numbers used to designate an item or procedure could be sufficiently creative to merit copyright protection," the evidence demonstrated no creativity where its "allocation of numbers to parts was an essentially random process, serving only to provide a useful shorthand way of referring to each part.").  If any of these part numbers were randomly created or arbitrarily ascribed to the products, they lack "even a spark of creativity" and copyright does not protect them.  *See Toro*, 787 F.2d at 1213 ("[N]umbers were assigned to a part without rhyme or reason. . . . Th[is] random and arbitrary use of numbers in the public domain does not evince enough originality to distinguish authorship."); *see also Mitel*, 124 F.3d at 1374 ("[T]he

ORDER – PAGE 34

arbitrary assignment of particular numbers to particular functions and its sequential ordering in registers and descriptions 'lack the modicum of creativity necessary to transform mere selection into copyrightable expression.'") (internal citation omitted).

As for part numbers "formulated . . . based on [Plaintiff's] determination of how customers might search for them online", *see* Doc. No. 136 at 8, those part numbers also lack the requisite creativity and are likewise not copyrightable. *See also Southco*, 390 F.3d at 282-83 ("'[B]asic copyright principles' lead to the conclusion that copyright protection should not be extended to part numbers that represent 'an inevitable sequence dictated by the logic of the parts system.'") (internal citation omitted). The slightest creativity in creating these part numbers would certainly undermine the customer's ability to search for them on Plaintiff's Website, which is the exact formula Plaintiff used in creating them. *See id.* (part numbers lacked creativity because "if any creativity were allowed to creep into the numbering process," customers would be unable to find the product they wished to purchase).

As for the product numbers of "fake products", Plaintiff fails to identify a single "fake product" number and fails to explain its process for generating these numbers. There is simply no summary judgment evidence showing the part numbers for "fake products" possess the requisite creativity and, therefore, these numbers are not copyrightable as original works. *See ATC Distrib.*, 402 F.3d at 707-08 (6th Cir. 2005);

ORDER – PAGE 35

*Mitel*, 124 F.3d at 1374 (concluding that the plaintiff's "random and arbitrary use of numbers in the public domain does not evince enough originality to distinguish authorship.") (internal quotations omitted).

Even if the Court assumes (without deciding) that some string of numbers ascribed to a product as a "part number" could be protected by copyright, Plaintiff fails to show by its summary judgment evidence "even a spark of creativity" in the part numbers it formulated.  Because they lack "creative expression", Plaintiff's part numbers are not entitled to copyright protection.  *See Southco*, 390 F.3d at 283.

### 4) Product Specifications

The "representative" sample of product pages submitted by Plaintiff also include product specifications for that particular product which are presented in a table format. Plaintiff argues that the product specifications are eligible for copyright protection as compilations of facts because Plaintiff selected the "most relevant" and "most important" product specifications for its customers and arranged them in the most effective way for its customers.  Doc. No. 126 at 22-23.  Defendant does not specifically address this argument, but it does respond generally that any copyright protection Plaintiff may have is limited to its selection and arrangement of product information. Doc. No. 133 at 12; *see also* Doc. No. 135 at 17.  Further, the summary judgment evidence clearly demonstrates that Plaintiff's product specification tables are eligible

for copyright protection as compilation of facts because Plaintiff's selection and arrangement of this information is original.  *See* Doc. No. 127 at 7, ¶ 6; *id.* at 315, 317-18.  For these reasons, Plaintiff's selection and arrangement of information in its product specifications is protected by copyright.  *See S. Credentialing*, 946 F.3d at 784.

<u>5) Plaintiff's Product Pages and Database</u>

Plaintiff argues that, because they satisfy the "low bar for originality", its product pages and its "database as a whole is protected by its copyrights."  Doc. No. 126 at 21, 24, 25.  According to Plaintiff, its database is comprised of all of the product pages and is "categorized into different types of products and searchable through search bar or the use of various filters."  *Id.* at 21.  Plaintiff contends that it "curated" its product offerings by "independently and individually" choosing which product pages to create, selecting those products which would be "attractive" to its customers and "profitable" for Plaintiff, omitting those products which Plaintiff did not wish to sell or were "undesirable", and categorizing these products and fashioning particular filters to facilitate their customers' ability to view these products.  *Id.*  Plaintiff also argues that, in addition to "their constituent parts," the product pages are protected by its copyrights.  *Id.*  Defendant responds that Plaintiff's database is not within the scope of its copyrights.  Doc. No. 133 at 14.  Defendant asserts that the database is nothing

ORDER – PAGE 37

more than a compilation of facts and, accordingly, only Plaintiff's selection and arrangement of product data is eligible for copyright protection. *Id.*

   The Court has already concluded that Plaintiff's valid Copyright Registrations cover both the preexisting works, Plaintiff's database, and the derivative works, the published updates. The Court also previously determined the elements of Plaintiff's product pages that are protectable by copyright. The Court concludes that Plaintiff's summary judgment evidence does not establish its product pages and, therefore, its database are original works of authorship; however, Plaintiff does demonstrate that its selection and arrangement of its product pages and, therefore, its database are sufficiently original. Plaintiff's database of "hundreds of thousands" of products includes those "products it wanted to sell" and excludes those Plaintiff "viewed as unprofitable, undesirable, or outside of [Plaintiff's] core market strategy." Doc. No. 127 at 6; *see id.* at 11 (Plaintiff's "database" is reflected in the product pages on its website). Mr. Krauss testified that Plaintiff added to its database only those products it saw "as being very relevant to our customer base and aligning with our strategy." *Id.* at 303. Plaintiff "selects and arranges" the information on each product page "independently in a manner [Plaintiff] believes will be most beneficial and efficient for readers" and "to best appeal to potential customers." *Id.* at 11. Mr. Krauss further testified that feedback and demand from Plaintiff's customers "guide[s] [Defendant's]

ORDER – PAGE 38

efforts" so to be "sure we have good, relevant product data for our specific kind of customer base." *Id.* at 303-04. Plaintiff also contends that it "categorized the product pages by type of product, such as circuit breakers, bus plugs, motor controls, switches, transformers, and fuses." *Id.* at 7. "[N]one of [Plaintiff's] competitors selling similar electrical products displays and arranges product information, including product specifications, in the same manner and with the same selection as [Plaintiff]." *Id.* at 7; *see id.* at 315, 322; *see also id.* at 388-97 (sample screenshots of competitors' websites further demonstrating Plaintiff's "creative expression" in its "unique selection and arrangement" of information on its sampling of product pages).

There is no copyright protection for Plaintiff's database grounded in Plaintiff's arrangement of products into categories, to the extent Plaintiff advances such an argument. Plaintiff presents no summary judgment evidence that its categorization is anything other than "mechanical" or that Plaintiff's arrangement of products into categories involved any creativity. *See Key Publ'ns, Inc. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 513-14 (2d 1991); *see also id.* at 515 ("Placing listings within categories is the sort of mechanical task that does not merit copyright protection."). Further, to the extent Plaintiff relies on the search features it "implemented" as support for arguing its database is copyrightable, this also fails. *See, e.g.,* Doc. No. 126 at 12, 21, 24. Plaintiff's search bar and filters which allow customers to search the product

pages are merely functional features of its database, and copyright protection does not extend to functions.  17 U.S.C. § 102(b); *see Provident Precious Metals, LLC v. N.W. Territorial Mint, LLC*, 117 F. Supp. 3d 879, 901 (N.D. Tex. 2015)(Lynn, J.) (citing *Entm't Rsch. Grp. v. Genesis Creative Grp.*, 122 F.3d 1211, 1221 (9th Cir. 1997) ("Purely functional, utilitarian or mechanical aspects, will not be given any copyright protection.") (cleaned up)).

The Court does, however, find Plaintiff's summary judgment evidence demonstrates sufficient creativity and originality in Plaintiff's selection and arrangement of products and the product information on the product pages which altogether comprise Plaintiff's database.  *See Advanta-STAR*, 2022 WL 179466, at *4 (finding the plaintiff's database satisfied the "minimal degree of creativity" because it "contains plaintiff's original selection, arrangement, and narratives of vehicle comparisons."); *see also S. Credentialing Support Servs., L.L.C. v. Hammond*, 946 F.3d 780, 783 (5th Cir. 2020) (holding that, even where "laws and hospital policies dictate the contents of the credentialing forms," plaintiff's forms possess the requisite originality because plaintiff "selected and arranged information in an efficient way" and this "unique selection and arrangement of information exhibit[s] creative expression."). Therefore, Plaintiff's selection and arrangement of product offerings in its product pages and its database, in as far as it consists of the aggregate of the product pages, is

entitled to copyright protection.  *See S. Credentialing*, 946 F.3d at 784; *see also Feist*, 499 U.S. at 347-48.

### 6) "Sweat of the Brow"

Plaintiff repeatedly emphasizes the time Plaintiff spent developing its product pages and Website, including that Mr. Vaughn "spent years accumulating and . . . compiling" product information "from different sources", that he "spent countless hours typing out content for product pages", and that Plaintiff's database of "hundreds of thousands of products" was created "one keystroke at a time".  Doc. No. 127 at 6, 273-74, 275, 276, 296; *see also* Doc. No. 126 at 9.  This is certainly evidence of his commitment and drive, but it is inapposite for purposes of this analysis.  Indeed, the time invested by Plaintiff in compiling the factual information is a factor the Court is precluded from considering.  "[O]riginality, not 'sweat of the brow,' is the touchstone of copyright protection in . . . fact-based works."  *Feist*, 499 U.S. at 359-60; *see also id.* at 352-56 (the "sweat of the brow" doctrine, which some courts had used to justify extending copyright protection to compilations of facts, "flouted basic copyright principles" requiring original works of authorship and precluding copyright in facts and ideas, and this doctrine was expressly remedied with the enactment of the Copyright Act of 1976 "[t]o ensure that the mistakes of the 'sweat of the brow' courts would not be repeated[.]").  "It may seem unfair that much of the fruit of the compiler's labor

may be used by others without compensation. . . . however, this is not 'some unforeseen byproduct of a statutory scheme.'" *Id.* at 349. "The primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.'" *Id.* (quoting U.S. CONST. art. 1, § 8, cl. 8). As explained above, only Plaintiff's selection and arrangement of the factual information is entitled to copyright protection.

<u>7) Conclusion</u>

For the foregoing reasons, the Court finds that Plaintiff has valid copyrights in its four Copyright Registrations, but only certain of Plaintiff's works are protectable by its valid copyrights. *See Star Athletica*, 580 U.S. at 411. Plaintiff established by its summary judgment evidence at least a minimal degree of creativity in its original selection and arrangement of the product descriptions, the "product accessories and similar products" sections, and the product specifications of those product pages submitted by Plaintiff as a "representative sample". *See* Doc. No. 127 at 213-233. The Court also finds that Plaintiff's selection and arrangement of product offerings in its product pages and the aggregate of those product pages which comprise the database are protected by its valid copyrights. However, the part numbers do not meet the low bar for originality and, therefore, are not protected by copyright.

### c. Actionable Copying

To succeed on its copyright infringement claims, Plaintiff must also prove actionable copying, which consists of both "factual copying" and "substantial similarity." *Nola Spice Designs*, 783 F.3d at 549. Plaintiff can show factual copying by direct evidence of copying. *See Batiste*, 28 F. Supp. 3d at 599; *Fed'n of State Massage Therapy Bds. v. Mendez Master Training Ctr., Inc.*, 393 F. Supp. 3d 557, 567 (S.D. Tex. 2019) ("Direct evidence . . . includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants.") (quoting *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 458 F. Supp. 2d 252, 256 (E.D. Pa. 2006)). Here, it is undisputed that Defendant copied Plaintiff's works. *See* Doc. No. 122 at 11-12; Doc. No. 127 at 352-53, 355-58.

But Plaintiff does not prevail on a showing of factual copying alone. *See also Feist*, 499 U.S. at 361 ("Not all copying, however, is copyright infringement."). Plaintiff must also show "substantial similarity" between its copyrighted works and Defendant's allegedly infringing work. *See Peel & Co.*, 238 F.3d at 395; *Eng'g Dynamics*, 26 F.3d at 1341. "A side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar'." *Lee*, 379 F.3d at 142 (quoting *Creations Unlimited*, 112 F.3d at 816); *accord Peel & Co.*, 238 F.3d at 395.

Plaintiff contends that a side-by-side comparison is not required "[g]iven the extensive nature of [Defendant's] copying," but, even if such comparison is required, a layperson could conclude only that Defendant's product pages are substantially similar to Plaintiff's copyrighted works.  Doc. No. 126 at 29-30.  Conversely, Defendant argues that it is entitled to summary judgment on Plaintiff's copyright infringement claim because Plaintiff cannot show substantial similarity.  *See* Doc. No. 122 at 13. Defendant asserts that it copied only factual product information from "a limited portion of [Plaintiff's] product pages" and then arranged the facts on its Website differently than Plaintiff's selection and arrangement of the same information.  *Id.* Defendant submits that Plaintiff cannot show qualitative and quantitative similarity between the parties' product pages.  *Id.* at 17-20.

The Court has determined the protectable elements of Plaintiff's works.  *See Nola Spice Designs*, 783 F.3d at 550 ("[W]here the copyrighted work contains unprotectable elements, the first step is to distinguish between protectable and unprotectable elements of the copyrighted work.").  Therefore, the next step is determining, from "the perspective of a 'layman' or 'ordinary observer'", "whether the allegedly infringing work bears a substantial similarity to the protectable aspects of the original work."  *Id.* Despite Plaintiff's argument to the contrary, a side-by-side comparison is dictated by

the controlling law.  *See, e.g., Nola Spice Designs*, 783 F.3d at 550; *Peel & Co.*, 238 F.3d at 395; *Cat & Dogma, LLC v. Target Corp.*, 2021 WL 4726593, at *3 (5th Cir. 2021).

Substantial similarity is usually a question best left for the factfinder.  *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 374 (5th Cir. 2020); *Nola Spice Designs*, 783 F.3d at 550.  Summary judgment in favor of the plaintiff on a copyright infringement claim is justified only "'when the similarities between plaintiff's and defendant's works are so overwhelming as to preclude the possibility of independent creation.'"  *Flowserve*, 2011 WL 1527951, at *4 (quoting *Wood*, 2004 WL 5866352, at *9).  "Accordingly, a finding of infringement is generally inappropriate at the summary judgment stage."  *Am. Registry*, 939 F. Supp. 2d at 707; *see also Flowserve*, 2011 WL 1527951, at *4 (remarking that "there are few instances in which courts in the Fifth Circuit have granted summary judgment in favor of a plaintiff on a copyright infringement claim.").  A finding of non-infringement may be determined on summary judgment if "no reasonable juror could find substantial similarity of ideas and expression."  *Peel & Co.*, 238 F.3d at 395; *accord Nola Spice Designs*, 783 F.3d at 550 (summary judgment appropriate if the court determines "that no reasonable juror could find substantial similarity."); *see Am. Registry*, 939 F. Supp. 2d at 708.

Here, the Court has reviewed the side-by-side comparison of Plaintiff's product page for "LC1009" and Defendant's product page for the same product submitted in

ORDER – PAGE 45

Plaintiff's Motion. Doc. No. 126 at 15-17; *see also* Doc. No. 134 at 15-17.  Although Plaintiff did not submit a side-by-side comparison of its representative sample product pages with the corresponding product page from Defendant's Website, the Court nonetheless reviewed the pages side-by-side.  *See* Doc. No. 127 at 213-254.  On this summary judgment record, the Court concludes that neither party satisfies its summary judgment burden as to a finding of infringement or noninfringement on Plaintiff's copyright infringement claim.

The summary judgment evidence demonstrates that at least some portions of Defendant's product pages are without question similar to protected elements of Plaintiff's product pages in the summary judgment record.  However, whether those similarities are substantial is not "so overwhelming" that the Court can find infringement as a matter of law.  *Flowserve*, 2011 WL 1527951, at *4.  A reasonable juror could determine that Defendant's product pages, even if they are not identical, are substantially similar as to the protected elements of Plaintiff's copyrighted works; conversely, a reasonable juror could determine that Defendant's product pages are not substantially similar to the protectable elements of Plaintiff's copyrighted works.  *See WorkSTEPS, Inc. v. ErgoScience, Inc.*, 88 F. Supp. 3d 732, 750 (W.D. Tex. 2015) (court found that the two works were "neither so dissimilar nor so similar" on "a side-by-side review" and concluded that "[w]hether these two works are ultimately similar or

dissimilar from a layman's point of view and whether, if similarities exist, those similarities are qualitatively so important the copying should be legally actionable, is for the factfinder, not the Court, to determine."); *Compaq Comput. Corp. v. Ergonome, Inc.*, 137 F. Supp. 2d 768, 781 (S.D. Tex. 2001) (finding that while "the relevant portions of Ergonome and Compaq's works . . . all convey the same ideas" and the pictures in both parties' book are "undoubtedly similar," there was "a fact issue as to whether they are similar enough to remove any doubt of Compaq's non-infringement."); *Am. Registry*, 939 F. Supp. 2d at 708 ("Plaintiff's side-by-side comparison of the ten copyrighted questions and the allegedly infringing material reveals that, although not identical, the works are similar enough that a reasonable juror could find substantial similarity of ideas and expressions.").   The Court determines there is a genuine issue of material fact as to the substantial similarity element of actionable copying. *Cf. Peel* & *Co.*, 238 F. 3d at 394 ("A fact issue is material if its resolution could affect the outcome of the action.").

### d.    Conclusion

The Court **denies** both Plaintiff's Motion and Defendant's Motion with respect to Plaintiff's copyright infringement claim because there is a genuine issue of material fact as to substantial similarity between the protectable elements of Plaintiff's copyrighted works and Defendant's allegedly infringing works.

### B.      Digital Millennium Copyright Act Claim

Defendant also moves for summary judgment on Plaintiff's DMCA claim. Relying solely on its argument that Plaintiff cannot establish copyright infringement, Defendant contends that without proving copyright infringement, Plaintiff is foreclosed from bringing this claim.   Doc. No. 122 at 20.   Plaintiff responds that because "there is at least a fact issue" as to its copyright infringement claim, Defendant is not entitled to summary judgment.  Doc. No. 134 at 32-33.

Plaintiff bases this claim on sections 1201 and 1202 of the DMCA.  Doc. No. 74 at 13-14.  "Section 1201 prohibits 'circumvention' of any 'technological measure that effectively controls access to' a protected work.  *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 276 (5th Cir. 2020). Section 1202, which is broader in scope than § 1201, "protects the 'integrity of copyright management information [CMI]' by prohibiting any person from intentionally removing or altering CMI if he or she knows or has reasonable grounds to know it would 'induce, enable, facilitate, or conceal' copyright infringement."  *Id.*; *see ADR Int'l Ltd. v, Inst. for Supply Mgmt. Inc.*, --- F. Supp. 3d ---, 2023 WL 2719446, at * 3 (S.D. Tex. Mar. 30, 2023). Defendant's argument that it is entitled to summary judgment on Plaintiff's DMCA claim rests solely on the presupposition that the Court will make a finding of non-infringement in favor of Defendant.  This argument fails since the Court determined

that there is a genuine issue of material fact as to Plaintiff's copyright infringement claim.  The Court **denies** Defendant's Motion for summary judgment on Plaintiff's DMCA claim because there is a genuine issue of material fact.

### C.    Computer Fraud and Abuse Act

Defendant moves for summary judgment on Plaintiff's CFAA claim.  As the Court previously noted, Plaintiff states in its Response that it "is withdrawing this claim" and will move to dismiss it.  Doc. No. 134 at 7 n.1.  Plaintiff has not yet moved to dismiss this claim, *see, e.g.,* Fed. R. Civ. P. 41(a), or otherwise stipulated to dismiss it.  Accordingly, the Court will **grant** summary judgment in favor of Defendant on Plaintiff's CFAA claim <u>no later than 21 days from the date of this Memorandum Opinion and Order</u> unless Plaintiff files dismissal papers before such time.

### D.    Defendant's Counterclaim and Affirmative Defenses

Plaintiff also moves for summary judgment on Defendant's affirmative defenses and its counterclaim for violation of the Harmful Access By Computer Act.  In its Response opposing Plaintiff's Motion, Defendant addressed Plaintiff's summary judgment argument on its fair use affirmative defense but failed to respond to Plaintiff's summary judgment argument on Defendant's eleven other affirmative defenses. Defendant also did not address Plaintiff's argument on Defendant's counterclaim for violation of the Harmful Access By Computer Act. In failing to address these summary

judgment arguments, Defendant has effectively abandoned its counterclaim and those eleven affirmative defenses.  *See In re Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). Therefore, the Court **grants** Plaintiff's Motion as to Defendant's Harmful Access By Computer Act counterclaim and the following of Defendant's affirmative defenses (to the extent these are valid affirmative defenses)—failure to state a claim (First); statute of limitations (Second); doctrine of laches (Third); doctrine of estoppel (Fourth); doctrine of unclean hands (Fifth); Plaintiff's actions and omissions causing or contributing to its damages (Sixth); failure to minimize or mitigate damages (Seventh); doctrine of consent and/or waiver (Eighth); statutory damages cap (Ninth); invalidity of Plaintiff's Copyright Registrations (Tenth); and no valid copyright owned by Plaintiff in any pre-existing material in Plaintiff's database (Eleventh).

### 1.    Fair Use Affirmative Defense

Plaintiff moves for summary judgment on Defendant's fair use affirmative defense, arguing that Defendant fails to present any evidence in support of this defense and all the relevant factors the Court must consider weighs against a finding of fair use. Doc. No. 126 at 42-43.  In its Response, Defendant asserts that its fair use of the copied materials presents a complete defense to copyright infringement.  Doc. No. 133 at 20.  Defendant maintains that it copied publicly-available product information

which constitutes fair use and because all four factors weigh in favor of finding fair use, Defendant is entitled to summary judgment on Plaintiff's copyright infringement claim because this affirmative defense bars a finding of infringement.  *See id.* at 20 n.4, 21-25.

"Fair use of a copyrighted work . . . for purposes such as criticism, comment, new reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not infringement of copyright." *Kepner-Tregoe*, 12 F.3d at 537 (quoting 17 U.S.C. § 107).  "Conspicuously absent from the list of fair uses is use for commercial purposes[.]" *Id.* at 537-38.  "Fair use of a mixed question of law and fact." *Harper &amp; Row*, 471 U.S. at 560.  The court's determination of the applicability of fair use is done on a case-by-case basis.  *Id.*  Four non-exclusive factors guide the court's fair use decision:  (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  § 107; *Harper &amp; Row*, 471 U.S. at 560-61.

 Fair use is an affirmative defense, therefore it is Defendant's burden to carry.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).  The Court concludes that there are genuine issues of material fact on at least the third and fourth factors.

The Court found a genuine issue of material fact exists as to substantial similarity for purposes of actionable copying of the copyright infringement claim. Should a jury conclude Defendant's copying is actionable for copyright infringement, the Court finds a material fact question exists as to the substantiality of the portion Defendant used in relation the Plaintiff's copyrighted materials as a whole. *See id.* at 587-88 ("[A] work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original.").

The Court also finds a material fact question exists as to the fourth factor, the effect of the use on the potential market. Defendant argues that "[Plaintiff] admits it cannot show *any* loss of sales or harm to its market" and claims only "damages equal to '[Defendant's] gross revenue' during the period of alleged infringement and cannot show that any of this revenue came at [Plaintiff's] expense." Doc. No. 133 at 24. In considering this factor, the Court must inquire about "the extent of market harm caused by the particular actions of the alleged infringer" and 'whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590. Here, Defendant fails to address market harm other than to state what *Plaintiff* cannot show as to its sales or market harm. Again, as fair use is an affirmative defense, Defendant has the burden and it will surely "have difficulty carrying the

burden of demonstrating fair use without favorable evidence about relevant markets." *Id.*

Having considered the facts of this case and the relevant factors of fair use, the Court finds there is a genuine issue of material fact and **denies** Plaintiff's Motion and Defendant's Motion on fair use.

### E.    Defendant's Deletion of Data File

In a footnote in its Motion, Plaintiff addresses Mr. Schneider's admission that he deleted Defendant's data file which contained the aggregated text he copied from Plaintiff's Website.  Doc. No. 126 at 27 n. 11.  Plaintiff argues that it "is entitled to an inference that the data file would have been unfavorable to [Defendant] and further evidenced [Defendant's] infringement of [Plaintiff's] Copyrighted Materials, including hundreds of thousands of product pages."  *Id.*  The Court is unclear whether Plaintiff is moving for relief by means of this footnote and what specific relief that is.  To the extent Plaintiff is so moving, the Court **denies** the request **without prejudice** to filing a formal motion, which clearly sets for the requested relief and supporting legal authority, should it become necessary.

## IV.   Conclusion

For the foregoing reasons, the Court **grants** Plaintiff's Motion for summary judgment on Defendant's counterclaim for Harmful Access by Computer in Violation

ORDER – PAGE 53

of § 33.02 of the Texas Penal Code.  The Court **denies** Plaintiff's Motion for summary judgment on Defendant's affirmative defense of fair use but **grants** Plaintiff's Motion for summary judgment on Defendant's eleven other affirmative defenses.  The Court **denies** Plaintiff's Motion for summary judgment on Defendant's liability for copyright infringement.

The Court **denies** Defendant's Motion for summary judgment on Plaintiff's claims for copyright infringement and for violations of the Digital Millennium Copyright Act. Defendant's Motion for summary judgment on Plaintiff's claim for violation of Computer Fraud and Abuse Act **will be granted no later than 21 days** of this Memorandum Opinion and Order issuing unless Plaintiff dismisses this claim, as represented in its Response.

**SO ORDERED.**

Signed December 17th, 2023.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE